Deborah Jean **GLADISH**, Appellant,

v.

Bruce Wayne **GLADISH**, Appellee.

Bruce Wayne **GLADISH**,
Cross–Appellant,

v.

Deborah Jean **GLADISH**, Charlene Hall
Jones, and Linda R. Ritter,
Cross–Appellees.

Nos. 85–CA–2924–MR,
85–CA–003020–MR.

Court of Appeals of Kentucky.

June 26, 1987.

As Modified July 10, 1987.

Rehearing Denied Sept. 18, 1987.

Discretionary Review Denied by the
Supreme Court Jan. 12, 1988.

Before CLAYTON, HOWARD and McDONALD, JJ.

McDONALD, Judge:

The appellant, Deborah Gladish, has appealed from the judgment of the Jefferson Circuit Court awarding permanent custody of her nine-year-old daughter, Amanda, to the appellee, Bruce Gladish. Deborah and Bruce were married in 1971. On February 25, 1983, Deborah petitioned the Jefferson Circuit Court for dissolution of the marriage. Initially the parties agreed that Deborah would have sole custody of Amanda, the only child of the marriage, and a decree of dissolution was entered on September 21, 1983, awarding Deborah sole custody of the child and providing routine visitation for Bruce.

On June 16, 1984, Bruce married Linda Simmons Gladish. Bruce, experiencing difficulty in exercising his visitation rights, made a motion for contempt which was heard on June 18, 1984. As Bruce was soon moving to California, the court took the opportunity to hear testimony from the parties. According to the court's findings of fact resulting from this hearing, both Bruce and Deborah were unhappy about visitation; Bruce alleged he was frequently denied visitation and that he believed Deborah was attempting to turn the child against him; Deborah believed Bruce to be unfit to have visitation and alleged that he sexually abused the child. Although Bruce made no motion to change custody, the court, sua sponte, vacated that portion of the decree relating to the permanent custody of the child, awarded Deborah temporary custody, and ordered the parties and child to be evaluated by Dr. Tadajewski. All motions were remanded until the court received Dr. Tadajewski's report. In his report to the court dated August 22, 1984, the psychologist recommended that custody of Amanda be given to Deborah. He summarized his reasons as follows:

Of the two parents in question she shows considerably better child rearing attitudes and understanding of the child's wants and needs. She also indicated that she would put the child's concerns first and foremost. Amanda has also strongly indicated that she does not want to live with the father and stepmother.

Apparently content with the temporary custody arrangement and the psychologist's opinion, neither party did anything to bring the issue of permanent custody before the court. A month after this report was filed Deborah's second attorney was allowed to withdraw from the case. Deborah represented herself when Bruce moved the court in December to allow Amanda to spend a week with him in California.[1]

On January 16, 1985, Bruce moved for a change in temporary custody. He submitted his affidavit and that of his attorney, neither of which contain any specific facts sufficient to entitle him to a hearing on the merits of his motion. The affidavits vaguely provide that despite Dr. Tadajewski's evaluation of Deborah, the affiants believed her "mental and/or emotional condition" to render her unsuitable to care for Amanda, and contain other general allegations parroting the statutory standard for modification.

Bruce originally noticed the hearing on his motion for January 21, 1985. Deborah, who had moved, did not receive the notice prior to that time. Inclement weather resulted in the motion docket being postponed for a week. Unhappy with a week's wait, Bruce's counsel approached the court for an earlier time. The exact ex parte communication is not known, but the court scheduled an evidentiary hearing on the *merits* of Bruce's motion for change of custody on January 28, 1985, and advised his counsel to notify Deborah to be present with Amanda on that date. On January 22, Bruce's attorneys met with a child protective service worker who noted in her records that the attorneys "came in to express concern for the emotional well being of Amanda Gladish.... They also state that Judge Schroering, * * *, and Judge Leibson, * * *, are extremely concerned about Ms. Gladish's mental stability and are seriously considering awarding custody to the father."

Deborah received notice of Bruce's motions and the hearing date two working days before the hearing. She was able to obtain counsel who moved for dismissal of the motion to modify or alternatively for a hearing on the sufficiency of Bruce's affidavits. These motions were denied and the court conducted the hearing over Deborah's objection. At the conclusion thereof, the court ordered that Bruce be given custody of Amanda and allowed him to take her to California that night.

In its findings of facts entered January 30, the trial court found that although Deborah was receiving a "substantial amount of child support and maintenance[2] ... [she was] unable for one reason or another, to either provide decent transportation for the child or even a suitable place to live." Deborah and the child were temporarily staying at a family emergency shelter house and were also without the benefit of an automobile. Deborah claimed she was in this position as Bruce was in arrears in his support obligations. The court did not make a specific finding concerning Bruce's failure to timely meet his financial obligations but instead ordered Deborah to move for a deficiency. The court concluded that it was in Amanda's best interest that temporary custody be given to Bruce, reasoning that "he can furnish to this child some sense of security which is sadly lacking currently with the child's present environment."

---

1. This motion was heard in a different division of the Jefferson Circuit Court by Judge Joseph Leibson.

2. During the marriage the Gladishes lived in a modern home appraised at over $150,000. Bruce earned in excess of $40,000 yearly during the marriage and more than $100,000 per year in California; Deborah was unemployed. The court required Bruce to pay only the sum of $600 per month child support and $500 per month maintenance. Considering the standard of living established during the marriage, these amounts hardly constitute "substantial" sums.

A hearing on permanent custody was scheduled for April; however, Bruce was granted a continuance, over Deborah's strenuous objection, four days before the hearing. Not until July did the court conduct a full-scale custody hearing. At the conclusion, Bruce was awarded custody. Deborah was awarded visitation from "time-to-time." It is from this judgment that Deborah has appealed. Bruce has cross-appealed from the order requiring that he pay a portion of Deborah's attorneys' fees.

We have set out a detailed history of this custody dispute in order to underscore the procedural irregularities which have occurred in this litigation. Deborah argues that the "momentum flowed in favor of the appellee" from the entry of the court's temporary custody order in January, 1985. Once the court erroneously gave Bruce temporary custody she could not, she argues, overcome that "momentum" at the trial on permanent custody. While we are in agreement with Deborah's perceptions of the situation, her failure to timely seek the proper remedies for the trial court's actions forecloses any possibility of correcting those errors in this appeal.

■ As the recitation of the facts indicate, the custody litigation was flawed from the very outset. The procedure to modify permanent custody is clearly set forth in KRS 403.340. Simply, the trial court was without authority to modify the custody decree in Deborah's favor on its own motion. See Chandler v. Chandler, Ky., 535 S.W.2d 71 (1975). The applicable statute contemplates that a motion for modification be made with supporting affidavits. As in the Chandler case, supra, there was "no semblance of compliance" with the mandates of KRS 403.340. The motions and affidavits before the court concerned only the issue of visitation. Bruce did not ask for or indicate that he even wanted custody. In fact, he told Dr. Tadajewski that he wasn't sure he should be the day-to-day custodian of Amanda. There being no request for the court to

modify custody, it appears the court was punishing Deborah for being, in its opinion, unreasonable in withholding visitation. Had Deborah objected to the court's vacation of the custody decree, we would not hesitate to reverse the final judgment on that basis. See Copas v. Copas, Ky.App., 699 S.W.2d 758 (1985). Nevertheless, not only did she not object but she was seemingly content, at that point in time, to further litigate all issues concerning Amanda.

■ Next the court acted erroneously in changing its temporary custody order. First, the affidavits were not sufficient for their intended purpose as a matter of law. KRS 403.350 specifically provides that "[t]he court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits...." As stated hereinbefore, the affidavits submitted to change temporary custody contained no facts upon which the court could find cause for a hearing but instead were vague and conclusory. Under those circumstances it was an abuse of discretion for the court to entertain Bruce's motion. West v. West, Ky.App., 664 S.W.2d 948 (1984). Forcing Deborah to defend her role as temporary custodian on such short notice and without benefit of the facts upon which the movant intended to rely was a particularly egregious denial of due process. However, her remedy was to file an original action in this Court seeking to prohibit the trial court from conducting the hearing. Such extraordinary relief is appropriate where the court is acting erroneously in its jurisdiction and where the party aggrieved has no remedy by appeal. Evans v. Humphrey, 281 Ky. 254, 135 S.W.2d 915 (1940). This Court does not hesitate to issue necessary writs, particularly to protect the well-being of children.

■ Although we agree that the trial court proceeded erroneously in conducting a hearing to modify temporary custody on the barren affidavits and further abused its discretion in modifying the custody arrangement,[3] we cannot afford the appellant

---

**3.** There are no facts in the court's findings sufficient to justify the drastic action of removing

Amanda from her mother's custody and sending

any relief as the temporary order has been replaced by a permanent custody decree. While we recognize the practical effect of the court's temporary ruling, there was nevertheless evidence, specifically the testimony of psychologist, Dr. Sheila Schuster, to support the court's finding that Amanda's best interest would be served by being placed in her father's care. Thus, under our standard of review, we cannot set aside the final custody award because of irregularities in the temporary custody phase of the litigation. *Stafford v. Stafford*, Ky. App., 618 S.W.2d 578 (1981); *Reichle v. Reichle*, Ky., 719 S.W.2d 442 (1986).

Likewise, Deborah's allegation that she was prejudiced by the ex parte communication between the appellee's counsel and trial court is untimely made. Despite his counsel's protest to the contrary, it is clear from the record that the court was made aware of factual allegations concerning Deborah by Bruce's counsel prior to the time his motion for modification of temporary custody was set to be heard. Nevertheless, Deborah became aware of that interchange before the hearing on permanent custody and did not ask the trial judge to recuse himself or follow the procedures provided for in KRS 26A.020.

Deborah argues she was prejudiced by the cumulative effect of these errors. Nevertheless, as stated hereinbefore, Deborah either failed to timely seek the proper remedy or acquiesced in the court's action to her detriment. There being sufficient evidence to support the court's judgment, we cannot say it abused its discretion although we might have decided the case differently.

■ Finally, Bruce alleges the court erred in requiring him to pay Deborah's attorneys' fees as she had the debt discharged in bankruptcy court. We find no error in the court's decision in this regard. Although Deborah need not legally pay this bill, it is clear from this record that Deborah, unlike the parties in the case of *Sullivan v. Levin*, Ky., 555 S.W.2d 261 (1977), wants her attorneys to be paid. It is for her benefit that the court ordered her at-

torneys to be compensated, no doubt so that she may obtain continuing representation in this appeal and for future problems certain to arise in this dispute.

The judgment of the Jefferson Circuit Court is affirmed.

All concur.

her to California until a hearing on permanent custody could be·held.