**Carla VANWINKLE (Now Benson), Appellant,**

v.

**Vicki L. PETRY and Douglas H. Petry, Appellees.**

**No. 2006–CA–000066–ME.**

Court of Appeals of Kentucky.

Jan. 19, 2007.

Traci H. Boyd, Boyd & Boyd, PLLC, Lexington, KY, for appellant.

Douglas H. Petry, Berea, KY, pro se.

Before BARBER[1] and DIXON, Judges; PAISLEY,[2] Senior Judge.

## OPINION

PAISLEY, Senior Judge.

Carla VanWinkle (now "Benson") seeks appellate review of a December 5, 2005

1. Judge David A. Barber concurred in this opinion prior to the expiration of his term of office on December 31, 2006. Release of the opinion was delayed by administrative handling.

2. Senior Judge Lewis G. Paisley sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

order of the Madison Family Court in which the family court modified the grandparent visitation of Carla's parents, Douglas H. and Vicki L. Petry (hereinafter referred to as the "Petrys") by giving the Petrys an extra weekend of visitation each month. In her brief, Carla argues that the family court erred when it, on its own motion, modified the Petrys' visitation; that Kentucky Revised Statutes (KRS) 405.021, the grandparent visitation statute, is unconstitutional; and that the Petrys' continued status as third party petitioners violates her constitutionally protected right to make decision regarding her children without undue interference. Finding that the family court erred, we vacate two provisions of the December 5th order and remand.

In February of 1994, Carla married Michael VanWinkle, and, during the marriage, the couple had two children: Emily and Joseph. At some point, Carla met and began having an affair with Keith Benson. Carla eventually moved out of the family residence, and she and the children moved in with her parents, the Petrys. Later, on October 15, 2002, Carla filed a petition for dissolution of marriage with the Madison Family Court.

After the dissolution proceeding was initiated, both Carla and Michael began accusing one another of being unfit to care for their children and each sought sole custody. The situation between Carla and Michael continued to deteriorate, and, on December 13, 2002, Carla filed a domestic violence petition against Michael. The family court, on December 20th, held a hearing regarding Carla's domestic violence petition. During the hearing, the parties made numerous allegations of abuse, neglect and violence. Since the allegations caused concern, the family court ordered the Cabinet for Families and Children, now the Cabinet for Health and

Family Services, to investigate. After Carla and Michael had consulted with their attorneys, they agreed that the Petrys should have temporary custody of the children while the Cabinet investigated the allegations of domestic violence.

On December 20th, the court entered a temporary custody order pursuant to the parents' agreement which granted temporary custody to the Petrys. In this order, the family court found that the children were dependent, neglected or abused. Oddly enough, the family court also entered another order on December 20th in which it granted joint custody to Carla and Michael.

After the Cabinet completed its investigation, the family court revisited Carla's domestic violence petition on January 3, 2003. The family court did not find sufficient evidence of domestic violence, yet, despite this, the family court did not return the children to their parents. Instead, the family court entered another order on January 3rd in which the court ordered that the parties' children would reside with the Petrys until the court ordered otherwise. In the January 3rd order, the family court made no mention of dependency, neglect or abuse, and it specifically stated that the Petrys should not be considered the children's *de facto* custodians. The family court also set forth a visitation schedule for Carla and Michael.

On January 31, 2003, the Petrys moved the family court for permission to intervene as third party petitioners in the dissolution action. Along with the intervention motion, the Petrys filed a petition for custody and visitation. Although the Petrys had only had temporary custody of the children for a little over a month, they argued in their petition that the family court should grant permanent custody of the children to them since the family court had previously found the children to be

dependent, neglected or abused and since they had formed a significant relationship with the children. In the alternative, the Petrys asked for visitation pursuant to KRS 405.021 if the court declined to grant them permanent custody. On February 18, 2003, the family court granted the Petrys' motion to intervene, and a three way custody battle began.

Later, on July 9, 2003, the family court entered a decree of dissolution of marriage but did not address the custody issue. On October 2, 2003, Carla, Michael and the Petrys entered into an agreed order which granted joint custody of the children to Carla and Michael and granted grandparent visitation to the Petrys. At this point, the Petrys no longer had any legal right to make decisions or be involved in decisions regarding the children. On November 14, 2003, Carla filed a *pro se* motion seeking permission to change the children's school and daycare arguing that she had plans to move to Lexington, Kentucky. At a hearing held on November 17, 2003, the family court denied Carla's motion. Carla subsequently moved to Lexington but maintained the children in the same school and daycare in Madison County. As a result, Carla had to transport the children back and forth along the interstate highway between Richmond and Lexington.

On December 16, 2003, the Petrys filed an *ex parte* motion for immediate sole custody of the children. According to the Petrys, the family court had previously ordered that the children were to continue to attend the Kit Carson Elementary School and to continue to attend daycare at Kidz [sic] Connection. The Petrys argued that Carla had moved to Lexington and intended to transport the children back and forth along the interstate between Lexington and Richmond in order to comply with the court's previous order. The Petrys felt that transporting the chil-

dren between Lexington and Richmond on a day to day basis during the week was too dangerous. Furthermore, they noted that Michael was living in Jackson County and argued that it would be in the children's best interest if they had sole custody. On that same day, the family court granted temporary sole custody to the Petrys. The family court did not find such custody would be in the children's best interest nor did it find that the children were dependent, neglected or abused. On December 22, 2003, the family court held a hearing on the custody of the children. At the hearing, Vicki Petry testified that both Carla and Michael had been evicted and both owed their landlords back rent. Vicki also testified that the children had been expelled from their daycare because Carla and Michael had failed to pay the tuition and that the parents owed approximately $1,000.00 in back tuition. Not only that, Vicki alleged that, when the children stayed with Michael, they were forced to sleep in his living room on a couch. Subsequently, on March 2, 2004, the court ordered that the Petrys would continue to have temporary sole custody of the children.

After the family court granted temporary custody to the Petrys, both Carla and Michael filed numerous motions, each seeking to regain custody of the children. On November 22, 2004, Carla moved the family court to set aside all of its previous custody orders. In a January 11, 2005 order detailing the history of the case, the family court denied Carla's motion. In this order, the family court repudiated its earlier finding that the children were dependent, neglected or abused. In addition, the family court stated that based on evidence adduced at the December 22, 2003 hearing, it had previously found by clear and convincing evidence that Carla and Michael were unfit parents. However, a thorough search of the record reveals that

the family court had made no such finding either in a written order or from the bench.

After the court denied Carla's motion to set aside the previous custody orders, Carla filed a petition for writ of prohibition and mandamus asking this Court to prohibit the family court from granting the Petrys continuing standing to pursue custody of the children and asking this Court to order the family court to restore custody to her and Michael. We denied the petition, holding that Carla had failed to show the necessary exceptional circumstances that would justify the extraordinary relief of either mandamus or prohibition.

After the original action in this Court had been resolved, Carla, Michael and the Petrys entered into an agreed order on July 28, 2005, which granted joint custody to Carla and Michael; relegated the Petrys to grandparent status; and granted grandparent visitation of one weekend per month to the Petrys, pursuant to KRS 405.021. However, on that same day, the Petrys filed yet another *ex parte* motion. In this motion, they sought to set aside the newly-minted agreed order claiming that Carla's attorney had contacted their attorney and had stated that Carla was planning to move to Florida with the children. According to the record, by July 28, 2005, Carla had not only married Keith Benson but had also had his baby. Furthermore, Keith, along with the baby, had moved to Florida to supposedly enhance the profitability of his internet company. On July 28, 2005, the family court granted the Petrys' *ex parte* motion and granted temporary custody of the children to Michael. After an August 8th hearing, the family court entered an order on August 26th in which the court reinstated the July 28th agreed order with two provisos: 1) the parents could not leave the Commonwealth with the children and 2) the parents were to share their parenting time on a seven day rotation.

On September 23, 2005, less than a month after regaining custody, Carla moved the family court for permission to move to Florida with the children. On that same day, the family court denied Carla's motion to relocate but stated that it would reconsider such a motion after six months if she provided proof of a Florida address, proof that Keith Benson's business was more profitable in Florida, and proof that Carla was meeting her financial obligations.

After the family court denied her motion to relocate, Carla began negotiating with Michael regarding their parenting time. In an unprecedented display of cooperation, Carla and Michael agreed to temporarily designate Michael as the children's primary residential custodian allowing Carla to move to Florida in order to obtain the information necessary to support a new motion to relocate. Carla and Michael agreed that the children would spend holidays and summer vacation with her in Florida and would spend the remainder of the year with Michael. Michael and Carla also agreed that the children would continue to visit with the Petrys once each month pursuant to the agreed order. Carla's attorney prepared a new agreed order reflecting the changes upon which the parties had agreed, but this new agreed order did not contain a signature line for the Petrys.

On November 28, 2005, the Petrys filed yet another *ex parte* motion regarding custody. The Petrys argued that Carla had abandoned the children and had moved to Florida. On November 28, 2005, the family court entered an *ex parte* order granting joint custody of the children to Michael and the Petrys. The family court held a hearing regarding the Petrys' *ex parte* mo-

tion on December 5, 2005. Both Carla and Michael argued that Carla had not abandoned the children but that they had agreed that Michael would temporarily be designated as the children's primary residential custodian. Citing *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), Carla argued that fit parents have a constitutional right to raise their children without undue interference from a third party. Carla pointed out that the agreement with Michael did not affect the Petrys' visitation rights so they had no right to be involved in that agreement. However, the family court disagreed and held that Carla and Michael could not enter into any further agreed orders without the participation of the Petrys. The family court also reinstated joint custody to the parents; prohibited the parents from traveling outside of the Commonwealth with the children; ordered that the Petrys would have to agree with Carla's visitation; and, on its own initiative, modified the Petrys' visitation granting an additional weekend of visitation per month to them. Now, Carla seeks relief from the family court's December 5th order.

■ In Carla's brief, she acknowledges that she and Michael signed an agreed order in October of 2003 which granted the Petrys visitation with the children one weekend per month, pursuant to KRS 405.021. In addition, Carla believes that this visitation is in the children's best interest and she does not challenge it. However, Carla does challenge the additional weekend of visitation that the family court awarded to the Petrys during the December 5, 2005 hearing.

Pursuant to KRS 405.021, grandparents have the right to petition a trial court for visitation with their grandchildren; however, if the parents object, the grandparents must prove, by clear and convincing evidence, that such visitation would be in the grandchildren's best interest. *Vibbert v. Vibbert*, 144 S.W.3d 292, 295 (Ky.App. 2004). Carla points out that prior to the December 5th hearing, the Petrys had not filed a petition for grandparent visitation as required by KRS 405.021, and, at the hearing, they did not request extra visitation either. The family court merely awarded this extra visitation *sua sponte*, and since it did not mention KRS 405.021, Carla contends that the family court granted the extra visitation without authority. Moreover, Carla cites both *Gladish v. Gladish*, 741 S.W.2d 658, 659 (Ky.App. 1987) and *Chandler v. Chandler*, 535 S.W.2d 71 (Ky.1975) for the proposition that a trial court cannot, on its own initiative, modify a custody decree without a request to modify. Since a trial court cannot modify custody *sua sponte*, Carla reasons that a trial court should not be able to modify visitation *sua sponte* either.

Regarding grandparent visitation, this court previously held:

[T]hat the appropriate test under KRS 405.021 is that the courts must consider a broad array of factors in determining whether the visitation is in the child's best interest, including but not limited to: the nature and stability of the relationship between the child and the grandparent seeking visitation; the amount of time spent together; the potential detriments and benefits to the child from granting visitation; the effect granting visitation would have on the child's relationship with the parents; the physical and emotional health of all the adults involved, parents and grandparents alike; the stability of the child's living and schooling arrangements; the wishes and preferences of the child. The grandparent seeking visitation must prove, by clear and convincing evidence,

that the requested visitation is in the best interest of the child.

*Vibbert v. Vibbert, supra.*

■ If a grandparent wishes to have visitation with a grandchild, he or she must petition the circuit court in the county in which the child resides and must prove by clear and convincing evidence that visitation is in the child's best interest. Furthermore, in analyzing the issue of the child's best interest, the circuit court should consider the factors set forth in *Vibbert.* In this case, the Petrys did not petition the family court for additional visitation; did not raise the issue of additional visitation at the December 5th hearing; and did not present any evidence that additional visitation would be in the children's best interest. In addition, the family court made no finding, pursuant to KRS 405.021, either from the bench or in a written order, that additional visitation would be in the children's best interest, nor did it consider the factors set forth in *Vibbert.* We find that the family court erred when it granted the additional visitation without following the required procedures. Thus, we vacate that part of the December 5, 2005 order that granted additional visitation. However, this ruling does not preclude the family court from granting additional visitation to the Petrys in the future if the mandates of KRS 405.021 and *Vibbert* are followed. We also vacate the provision of the family court's order that provides that the Petrys must approve any changes regarding Carla's time with the children. Such an arrangement violates the parents' rights under *Troxel v. Granville, supra* as discussed below.

In the alternative, Carla claims that KRS 405.021 is unconstitutionally vague. However, since we vacate that portion of the family court's order in which it granted additional visitation, we decline to address the merits of Carla's constitutional challenge.

■ In addition to challenging the additional visitation, Carla also challenges the Petrys' status as third party petitioners in the dissolution action. Carla does not dispute that the Petrys had a right to intervene in the dissolution action in January of 2003; however, Carla claims that the Petrys' continuing involvement in the dissolution action violates her and Michael's constitutional rights to make decisions regarding their parenting time. According to Carla, the Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a parent's fundamental right to make decisions regarding the care, custody, and control of his or her child without undue interference. *Troxel v. Granville, supra* at 65, 120 S.Ct. 2054. Carla contends that the family court has allowed the Petrys to continually thwart her and Michael's ability to make decisions for their children, especially when it comes to decisions about custody and parenting time.

Regarding a parent's right to raise his or her child, the United States Supreme Court stated the following:

The liberty interest at issue in this case-the interest of parents in the care, custody, and control of their children-is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in *Meyer v. Nebraska,* 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in *Pierce v. Society of Sisters,* 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), we again held that the "liberty of parents and guardians" includes the

right "to direct the upbringing and education of children under their control." We explained in *Pierce* that "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Id.,* at 535, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070. We returned to the subject in *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Id.,* at 166, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645. In subsequent cases also, we have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. See, *e.g., Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements'" (citation omitted)); *Wisconsin v. Yoder,* 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition"); *Quilloin v. Walcott,* 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) ("We

have recognized on numerous occasions that the relationship between parent and child is constitutionally protected"); *Parham v. J. R.,* 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course"); *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (discussing "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child"); *Glucksberg, supra,* at 720, 117 S.Ct. 2258 ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the righ[t] ... to direct the education and upbringing of one's children" (citing *Meyer* and *Pierce* )). **In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.** (emphasis added.)

*Troxel v. Granville, supra* at 65–66, 120 S.Ct. 2054. Even though a parent has a fundamental and constitutionally protected right to make decisions regarding his or her child, that right is not unfettered. For example, in a dissolution action, a trial court may grant joint custody of a child to both parents, or it may grant sole custody to one parent, thereby, limiting the other parent's right to make decisions for the child. KRS 403.270. Pursuant to KRS 403.340, based upon a showing that a change of circumstances has occurred and the modification of custody is necessary to the serve the best interest of the child, a

trial court may modify custody stripping both parents of custody and vesting custody in a third party such as a *de facto* custodian. The Commonwealth's ability to interfere with a parent's custody does not end there. Pursuant to KRS Chapter 620, the Commonwealth can remove a child from a parent's custody through a dependency, neglect or abuse action.

Against this backdrop of law, we now turn our attention to the facts of this case. In the Petrys' various *ex parte* motions, they never alleged that Carla and Michael were unfit; never alleged that the children were dependent, neglected or abused; and never alleged that they, the Petrys, were acting as *de facto* custodians. Apparently, the Petrys were operating under the assumption that they had a continuing right to make decisions for the children or, at least, be involved in such decisions even when the family court had granted joint custody to Carla and Michael. However, after the July 28th agreed order, the only right the Petrys had regarding the children involved visitation. They simply had no legal right to be involved in decisions regarding the children. Despite this, they continued to file *ex parte* motions with the family court seeking custody of the children when they disagreed with the parents' decisions. By doing so, the Petrys unduly interfered with the parents' constitutionally protected rights to make decisions for their children. *See Troxel v. Granville, supra.*

While we can certainly find no fault with the family court for entertaining the Petrys' various *ex parte* motions, we are disturbed by the family court's willingness to grant those motions even though the Petrys never claimed that the parents were unfit; or that the children were dependent, neglected or abused; or that they were acting as *de facto* custodians. Furthermore, the family court never found the

Petrys to be *de facto* custodians, and, while it found that the children were dependent, neglected or abused in December of 2002, it later retracted that finding, stating that the finding was a mistake. In addition, the family court never found that Carla and Michael were unfit parents, despite the family court's insistence to the contrary. The family court repeatedly treated the Petrys as if they had a legal right to be involved in decisions regarding the children even though it had granted joint custody to Carla and Michael. By doing so, the family court gave virtual veto power to the Petrys over the parents' decisions. Thus, the family court violated, on several occasions, Carla and Michael's parental rights as recognized by *Troxel v. Granville, supra.*

However, we cannot grant the relief that Carla is seeking, that is the dismissal of the Petrys from the dissolution action. Since the Petrys have been granted visitation pursuant to KRS 405.021, they remain parties to the action to that extent. We hasten to add that simply because they have such visitation does not give them the legal right to be involved in decisions regarding the children unless those decisions affect their visitation. Furthermore, if we were to dismiss the Petrys from this action, such a dismissal would not preclude them from filing, at some point in the future, another motion to intervene. Despite the merits of such a motion, the family court would be bound to entertain it, and, if such a motion were meritorious, the family court would be bound to grant it. However, this is not a license for the Petrys to continue using the court system to meddle in the parents' decisions regarding the children. At this point in time Carla and Michael have joint custody of the children, and they, not the Petrys, have the legal right and obligation to make decisions regarding the children. The fact that the Petrys may disagree with some of

the parents' decisions is not sufficient grounds for the Petrys to seek and be awarded custody of the children. Moreover, we caution the family court to be mindful that due process protects Carla and Michael's fundamental right to make decisions regarding the care, custody and control of their children.

The provisions of the family court's December 5, 2005 order awarding additional visitation to the Petrys and requiring the Petrys' approval regarding Carla's visitation are vacated. The remainder of the order is affirmed.

ALL CONCUR.