RENDERED:  JUNE 28, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1091-MR

JOHN PAUL KUTTER                          APPELLANT

v.
         APPEAL FROM FAYETTE FAMILY COURT
HONORABLE TRACI B. BRISLIN, JUDGE
ACTION NO. 19-CI-02733

TARA KRISTIN KUTTER                        APPELLEE

OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND LAMBERT, JUDGES.

ECKERLE, JUDGE:  Appellant, John Paul Kutter ("Father"), appeals from a post-decree order of the Fayette Family Court solely allowing Appellee, Tara Kutter ("Mother"), to make educational and religious decisions on behalf of their children notwithstanding the terms of their separation agreement.  We conclude that, under

the circumstances of this case, the educational and religious provisions of the parties' agreement relate to – but are not necessarily controlled by – custody and are subject to modification. We further conclude that Mother's appointment as temporary sole custodian did not automatically entitle her to make such decisions in contravention of the terms of the agreement and later decree. Consequently, the Family Court erred by granting Mother's motion to enroll the children in a different school. Rather, this matter must be remanded for an evidentiary hearing and findings to determine whether Mother has established grounds for modification of custodial terms. Hence, we affirm in part, reverse in part, and remand for further proceedings.

Father and Mother married in 2014. That year and in 2015, two children, S.G.K. and J.L.K. ("Children"), respectively, were born of the marriage. In April of 2019, Father and Mother separated. They later entered into a Separation Agreement ("the Agreement"), which the Family Court adopted in its Decree of Dissolution entered October 2, 2019 ("Decree"). In pertinent part, the Agreement granted joint custody of Children, with a relatively equal parenting schedule. The Agreement further provided that Children would continue to attend Lexington Christian Academy ("LCA") through Grade 12 or until graduation. Father was required to pay all tuition expenses, and he agreed to reimburse Mother for additional expenses incurred by Children while attending LCA. In addition, the

Agreement granted Father timesharing with a step-daughter,[1] and he agreed to pay LCA expenses for her as well.

In 2022, Mother sought and obtained a Domestic Violence Order ("DVO") on her own behalf and behalf of Children against Father. The DVO also granted Mother temporary sole custody of Children and included a provision prohibiting Father from any contact with Children. The Cabinet for Health and Family Services ("Cabinet") filed companion dependency/neglect/abuse ("DNA") petitions involving Children.[2]

Following entry of the DVO, Mother filed a "notice of relocation," which Father did not oppose. Thereafter, on January 12, 2023, Mother filed a motion to change Children's school. She alleged that the Agreement's provision requiring Children to attend LCA had become impracticable. Mother noted that no one in this case resides in Lexington. She and Children relocated to Burgin, Mercer County, Kentucky, following the entry of the DVO. The relocation now requires a 45-minute drive each way to attend LCA. Those transportation duties now fall to Mother due to the no-contact order. Mother further alleged that Father was no longer reimbursing her for school-related expenses. Finally, Mother

---

[1] This step-daughter will also be addressed inclusively within the group "Children."

[2] The records and specific allegations in the DVO and DNA cases are not included in the Record on Appeal of this case.

alleged that Children no longer wish to attend LCA. Consequently, Mother requested that she be allowed to un-enroll Children from LCA and enroll them at a school in Burgin.

Father objected, arguing that the provision of the Agreement relating to Children's attendance at LCA was not subject to modification. The Family Court appointed a Friend-of-the-Court to conduct an evaluation and make recommendations concerning the best interests of Children. The Family Court also scheduled a hearing, which was held on July 13, 2023. However, the Family Court declined to hear any testimony, including the evaluation conducted by the Friend-of-the-Court. Rather, the Family Court concluded peremptorily, as a matter of law, and without any findings of fact, that Mother had had the unilateral authority to nullify the provisions of the Agreement and change the religious education of Children following her appointment as temporary sole custodian. The Family Court memorialized this finding in a summary order entered on July 28, 2023.

Father filed a timely motion to reconsider under CR[3] 59.05, arguing that the religious and educational provisions of the Agreement requiring schooling at LCA remained enforceable despite the change in temporary custody. He also argued that the Agreement required mediation of any disputes prior to seeking relief from the courts. But since mediation was allegedly not available due to the

---

[3] Kentucky Rules of Civil Procedure.

DVO, Father argued that the school provision would not be subject to modification.[4]

In an order entered on August 29, 2023, the Family Court denied the motion to reconsider. The Family Court separately, and again summarily, found that it would be in Children's best interests to attend a school in the county in which they reside, without any discussion of the religious requirement. Finally, the Family Court stated that it may revisit this issue upon a resolution of the underlying DVO and DNA matters. Consequently, the Family Court held that Father could reserve Children's places at LCA pending that resolution.[5] Father now appeals. Additional facts will be set forth below as necessary.

Father primarily argues that the Agreement's provisions regarding Children's attendance at LCA remain enforceable despite the change in temporary custody. In this case, the Family Court decided the issue as a matter of law.

---

[4] The parties and the Family Court agreed that mediation is not available due to the DVO. Given our ultimate conclusion, we need not reach this question. But whether the mediation aspect of the Agreement could be ignored is not as clear as suggested. Even with the DVO, the Family Court could permit contact remotely, through counsel only, or otherwise for the parties to discuss solely the issues of education and religious upbringing, although that would be within the discretion of the Family Court.

[5] Based on the representations in the parties' briefs, it appears that Mother removed Children from LCA and enrolled them in her local school district. Father did not seek a stay of this aspect of the Family Court's order, even though this is the very reason for his appeal. Consequently, we presume that Children are still attending the school in Burgin. The Family Court indicated it might change its mind in the future, and the matter is subject to this appeal, which could change the outcome again. These changes affect Children's best interests and are yet another reason that a full record on appeal and findings of fact below are necessary.

Consequently, we conduct a *de novo* review of the Family Court's application of the law to the established facts to determine whether the ruling was correct as a matter of law. *Glodo v. Evans*, 474 S.W.3d 550, 553 (Ky. App. 2015).

We agree with the Family Court that, as a general rule, an award of sole custody includes the right of the custodial parent to make decisions for the child, including schooling. Specifically, KRS[6] 403.330(1) provides:

> Except as otherwise agreed by the parties in writing at the time of the custody decree, the custodian may determine the child's upbringing, including his education, health care, and religious training, unless the court after hearing, finds, upon motion by the noncustodial parent, that in the absence of a specific limitation of the custodian's authority, the child's physical health would be endangered or his emotional development significantly impaired.

*See also Farley v. Willis*, No. 2022-CA-0465-MR, 2023 WL 3028227, *3 (Ky. App. Apr. 21, 2023) (unpublished) (citing *VanWinkle v. Petry*, 217 S.W.3d 252, 259 (Ky. App. 2007)). The statute recognizes that parties may enter into an agreement to share decision-making on educational, religious, and other matters. But because the parties in this case expressly agreed on the particular school Children would attend, a school that encompasses both education and religion, the provisions of KRS 403.330(1) do not apply in this case. *Burchell v. Burchell*, 684 S.W.2d 296, 299 (Ky. App. 1984).

---

[6] Kentucky Revised Statutes.

Rather, KRS 403.180 allows a court to incorporate the terms of a settlement agreement into a dissolution judgment upon a finding that the agreement is not unconscionable. The terms of a separation agreement are binding upon a trial court, "except those providing for the custody, support, and visitation of children[.]" KRS 403.180(2). Likewise, a separation agreement may not limit or preclude modification of terms concerning child support, custody, or visitation. KRS 403.180(6). Thus, parties who seek redress in the court system cannot prevent courts from modifying terms of their agreement that pertain to custody, visitation, and child support. *Berry v. Cabinet for Fams. & Child. ex rel. Howard*, 998 S.W.2d 464, 468 (Ky. 1999). But on all other matters, "[t]erms of the agreement set forth in the decree are enforceable by all remedies available for enforcement of a judgment, including contempt, and are enforceable as contract terms." KRS 403.180(5).

Father maintains that the school provision is "collateral" to, or independent of, the custodial terms of the Agreement. Consequently, he argues that it is only modifiable as provided in the Agreement or upon a finding of a change in circumstances that it has become unconscionable. *Bailey v. Bailey*, 231 S.W.3d 793, 796 (Ky. App. 2007). Mother counters that the school and religious provision is modifiable as "incident" to, or part of, custody. Thus, given the fundamental change in the parties' circumstances, Mother asserts that she should

have the right as temporary sole custodian to make these decisions unilaterally for Children.

Neither party cites any Kentucky authority on this very important issue. Likewise, we have not found any case law directly addressing this significant matter. But it is well-established that a contract or agreement must be construed as a whole, giving effect to all parts and every word if possible. *Swan v. Gatewood*, 678 S.W.3d 463, 469-70 (Ky. App. 2023) (citing *City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986)). Here, Section 4 of the Agreement provides, in pertinent part:

> The definition of joint custody as envisioned by these parties is that they shall both continue to have an active role in providing a sound social, economic, educational, and moral environment for their children. The parties shall consult with one another on substantial questions relating to educational programs, religious upbringing, significant changes in social environment, and health care.

Section 8 of the Agreement further provides that "[Mother] agrees to allow all 3 children to attend [LCA] through grade 12, until they have graduated." That section also specifies the parties' respective responsibilities for those expenses. When the Agreement is read as a whole, the parties clearly and repeatedly intended that the provisions of educational, religious, and moral upbringing should be viewed as part of the terms of joint custody and not independently of those terms.

Moreover, the venue where children attend school is a component of the custody of those children. Like healthcare, educational and religious decisions are "major decisions" to be made by custodians. *Fenwick v. Fenwick*, 114 S.W.3d 767, 777 (Ky. 2003), *overruled on other grounds by Pennington v. Marcum*, 266 S.W.3d 759 (Ky. 2008). The argument between the parties here depicting the choice of educational and religious schooling as either collateral or incidental to custody does not change the reality that it is in its very essence still a matter of custody. Consequently, and with the awareness that we are issuing our decision as a matter of first impression, we conclude that this provision was subject to the ongoing jurisdiction of the Family Court to modify custody under KRS 403.180(6).

Father further argues that he was entitled to an evidentiary hearing to determine whether it would be in the best interests of Children to modify the terms of the Agreement. Generally, modification of custody is governed by KRS 403.340, which requires evidence and factual findings concerning the best interests of the children. *See Murry v. Murry*, 418 S.W.3d 432, 435 (Ky. App. 2014) (citing *Anderson v. Johnson*, 350 S.W.3d 453 (Ky. 2011)). In this case, however, the Family Court took the position that the custody determination had already been made in the DVO proceeding. We disagree emphatically.

Both KRS 403.270 and KRS 403.320 authorize a trial court to grant custody and visitation as the result of a finding of domestic violence according to

the meaning of KRS 403.720. Father was also the subject of a no-contact

provision in the DVO and as part of the Cabinet's case plan in the DNA actions.

But while Mother had been designated as temporary sole custodian, and Father had

been barred from any contact with Children, the award of temporary sole custody

did not necessarily include the authority to make educational and religious

decisions on behalf of Children, particularly in light of the parties' express,

voluntary Agreement to the contrary, which the Family Court incorporated into the

custodial terms of the Decree.

The change to sole custody did not alter the other custodial terms of

the Decree. In *London v. Collins*, 242 S.W.3d 351 (Ky. App. 2007), this Court

explained that a custody order entered in a separate proceeding may, but does not

always, amount to a "custody order" within the meaning of KRS 403.340:

> Before a custody decree is entered the trial court must determine what custody arrangement will be "in accordance with the best interests of the child." KRS 403.270(2). In order for the Court to consider the child's best interests, the parties, including any de facto custodian, are given a meaningful opportunity to be heard. KRS 403.270(2) also sets out nine specific factors which the court must consider in determining the best interests of the child. Once these proceedings are concluded and a "custody decree" is entered, KRS 403.340 allows for modification only under very limited circumstances. The obvious intent of the time and pleading requirements of KRS 403.340 and 403.350 is to prevent continuing litigation of custody after the issues have been fairly concluded between the parties. *Quisenberry v. Quisenberry*, 785 S.W.2d 485, 488 (Ky.

-10-

1990) (superceded on other grounds by 2001 Ky. Acts
Ch. 161, Sec. 2).

*Id.* at 356.

In *London*, the issue concerned whether a permanency order in a dependency action under KRS Chapter 620 satisfied the requirements of KRS 403.270(2). This Court held that, while such an order would ordinarily satisfy those requirements, the order at issue did not because no evidence was taken at the hearing and because the order failed to recite any of the statutory findings. *Id.* at 356-57. Consequently, the permanency order was not a "custody decree" within the meaning of KRS Chapter 403. Since that order was not subject to the requirements for modification under KRS 403.340, the family court was required to consider the petition for custody as if there had been no prior custody determination. *Id.* at 357.

Here, the underlying orders in the DVO and DNA actions are not part of the record on appeal. Consequently, we have no way to determine whether those orders would constitute a "custody order" within the meaning of KRS 403.340. Furthermore, Mother did not allege that the temporary custody order precluded her from transporting Children to LCA – only that it was more difficult for her to do so due to her voluntary, unilateral relocation and the restrictions on Father. And there was no evidence, other than Mother's allegations in her

-11-

pleadings, that a change of schooling would be in Children's best interests.[7] Under these circumstances, we conclude that the Family Court was required to conduct an evidentiary hearing and make findings under KRS 403.340 as to whether the provisions of the Decree should be modified.

Under KRS 403.340(3), the Family Court

shall not modify a prior custody decree unless after hearing it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child. When determining if a change has occurred and whether a modification of custody is in the best interests of the child, the court shall consider the following:

(a) Whether the custodian agrees to the modification;

(b) Whether the child has been integrated into the family of the petitioner with consent of the custodian;

(c) The factors set forth in KRS 403.270(2) to determine the best interests of the child;

(d) Whether the child's present environment endangers seriously his physical, mental, moral, or emotional health;

---

[7] Curiously, despite the lack of any evidence in the record, the Family Court's order on the CR 59.05 motion specifically found that "[t]he best interest of the children allows the Court to make this decision[,]" and "[t]he Court finds that it is not in the best interests [of Children] to be in the car for 45 minutes each way back and forth to school."

-12-

(e) Whether the harm likely to be caused by a change of environment is outweighed by its advantages to him; and

(f) Whether the custodian has placed the child with a de facto custodian.

KRS 403.340(4) further sets out the factors that the Family Court must consider in determining whether the child's present environment may endanger seriously his or her physical, mental, moral, or emotional health. Because the Family Court failed to conduct such a hearing and make the necessary findings, we must reverse its order allowing Mother to remove Children from LCA unilaterally and without agreement; and we remand this matter for additional proceedings and findings whether such a change is warranted under this statute.

In conclusion, we recognize that, with the "One Family, One Judge, One Court" approach, cases are presented in a single court, allowing the same judge to hear all matters involving a particular family. Although this approach has many advantages, it may lead to the Family Court judge taking notice of evidence and actions taken in other proceedings without developing the record in the particular action before the Trial Court or this Court. As demonstrated in the current case, this approach creates difficulties on appeal because this Court lacks access to that evidence and those records. In the face of a silent record, we cannot simply assume that the actions taken in the separate cases would support the decision in this case.

-13-

Next, we must emphasize that this case presents an unusual situation. Temporary custody is intended to be just that – a short-term modification of custody. While the underlying allegations are not developed in this appeal, they are serious and must be fully investigated. Thus, we urge that those issues should be resolved as soon as possible. In the interim, Father is entitled to enforce other custodial terms of the Decree unless Mother establishes the grounds necessary to modify those terms.

And finally, while it is not evident from the scant record to be the situation in this case, we are mindful that DVOs have been sought elsewhere for ulterior motives. We are thus duly hesitant to recognize a rule whereby custodians under temporary DVOs can suddenly make decisions contrary to prior agreements on major custodial issues without court approval. A different holding would countenance or even encourage the seeking of DVOs for improper purposes.

Accordingly, we affirm in part, reverse in part, and remand with directions for the Family Court to conduct an evidentiary hearing and make findings whether the LCA provision of the Decree should be modified under the provisions of KRS 403.340.

ALL CONCUR.

BRIEF FOR APPELLANT:                BRIEF FOR APPELLEE:

Rachel D. Yavelak                   Jennifer McVay Martin
Lexington, Kentucky                 Lexington, Kentucky