**Virginia MOSLEY, Appellant,**

v.

**Stanley MOSLEY, Appellee.**

Court of Appeals of Kentucky.

Oct. 22, 1954.

Edward T. Breathitt, Jr., Hopkinsville, for appellant.

John O. Hardin, Hopkinsville, for appellee.

CAMMACK, Justice.

The appellee, Stanley Mosley, brought suit against the appellant, Virginia Mosley, for an absolute divorce on the ground of cruel and inhuman treatment. Later his petition was amended to include the ground of lewd and lascivious conduct. Mrs. Mosley counterclaimed for a divorce on the ground of cruel and inhuman treatment. She was granted an absolute divorce on her counterclaim. The custody of their daughter, now four years old, was awarded to the paternal grandparents.

Mrs. Mosley has prosecuted this appeal from that part of the judgment which places the custody of the child with her paternal grandparents.

The parties were married December 19, 1948. At that time neither was employed so they went to live on Stanley's father's farm, where he worked and raised some crops. They first lived in an apartment in his father's house but later moved to a small house on his father's farm. Stanley has a physical affliction which prevents him from doing manual labor. Mrs. Mosley has trouble with her eyes, so both parties are handicapped to some extent. They lived on the farm until July 9, 1952, when both began working at the Western State Hospital, where Stanley is still employed.

Stanley testified and introduced other evidence to show that Mrs. Mosley did not know how to take care of the child and that she would whip and beat her for no reason, even when she was only two or three weeks old. He said she had a violent and ungovernable temper. He also said that while they were living together she became very angry on different occasions and broke up the furniture and even tore a door down. He said she did not give the baby proper food and would neglect her when she needed care. At one time the baby was suffering from rickets, and Stanley said the doctor stated she was suffering also from malnutrition.

Stanley also attempted to prove that Mrs. Mosley was unchaste and had engaged in lewd and lascivious conduct. However, the only evidence in this respect is that she was seen talking with some of the men who work at the Hospital and that some of them were seen entering her room. She went to a movie with another man after she and Stanley separated but before the divorce decree was entered. The chancellor held that this was insufficient to substantiate the charge of lewd and lascivious conduct, and we concur in that opinion.

Mrs. Mosley testified and introduced the testimony of other witnesses to show that she was a good housekeeper; that she took good care of the baby; and that she did not have an ungovernable temper. It appears that she resented what she deemed inter-

ference in her married life by Stanley's mother. While she may have been indiscreet, we do not think she is morally unfit to care for the child. Mrs. Mosley lives with her parents and works in a small grocery store owned by them in the mining section of Hopkins County.

The child unfortunately suffers from a deformity to her feet. She has been living with her paternal grandparents practically all her life and they have given her the medical attention she needs. Through their efforts much has been done to correct the condition of the child's feet, and much still remains to be done. The grandparents have provided the child with a good home and have given her the loving care and affection she needs. In November, 1952, they tried to adopt the child and at first Mrs. Mosley agreed to that procedure, but refused to go through with it.

Mrs. Kathrine Hall, a child welfare worker, on request of the attorneys, submitted an evaluation of the homes of the parents of the appellant and the appellee. She concluded that either home would be suitable for the child.

The chancellor stated in his opinion that Mrs. Mosley is in no condition financially to care for the child and give her adequate medical attention. He stated also that, after seeing the mother in court and hearing her testify, he was strongly of the opinion that she is emotionally unstable and under the complete domination of her mother and sisters and that the home conditions which the mother would offer at her mother's grocery store in the mining section of Hopkins County can in no way be compared with the good home the child now has.

With these facts in mind, we are now called upon to determine in which of the two homes the best interest of the child dictates that it be placed. The quotation from In re Krauthoff, 191 Mo.App. 149, 177 S.W. 1112, 1113, used by the chancellor, expresses in profound language our feelings in this case. The quotation follows:

"Herein we are asked to exercise our jurisdiction as a court of chancery in the adjudication of an exceedingly difficult, embarrassing, and important question, one that affects the most sacred feelings and reaches the profoundest depths of the human heart—which of two separate parents shall be awarded the custody of their child. It is an unwelcome task, fraught with heavy responsibility. In its performance, however careful and sympathetic we may be, we must walk with heavy tread into the very sanctum sanctorum of parental affection, and, laying hands upon the jewel there enshrined, make such disposition of it as, in our finite wisdom, its best interest may seem to require. It is a painful duty, from which every well-regulated mind must shrink, since its performance has to do, not only with the tender relations of parent and child, but involves the future course of a human life, and perhaps may have an influence upon the destiny of an immortal soul. * *"

We are fully aware of the rule that where very young children are involved the mother is preferred above all others as the one in whom their custody should be placed. But we are also cognizant of the fundamental rule that the interest the court has in the welfare of children outweighs all other considerations.

Here we have a four year old girl with a physical handicap, who has lived with her paternal grandparents practically all her life. We do not believe we would be serving the child's best interest by taking her from the only home she has ever known and placing her in one that is utterly foreign to her. She has been given the loving care and medical attention in her grandparents' home that a child of her age and physical condition should have.

In view of all the circumstances of this case, including the physical condition of the child, we are convinced, as was the chancellor, that the best interest of the

child and her opportunity for future growth and development demand that the custody be not disturbed at this time. The mother is young and it may be that in future years she will be able to provide the child with a good home and good surroundings.

Judgment affirmed.