**Wilma Noland WATSON, Appellant,**

v.

**Donny Russell WATSON, Appellee.**

Court of Appeals of Kentucky.

Nov. 15, 1968.

John M. Coy, Coy & Coy, Richmond, for appellant.

Peter J. Flaherty, Shumate, Shumate & Flaherty, Irvine, for appellee.

PALMORE, Judge.

Wilma and Donny Watson were married in 1964 when both were of relatively tender age. Now they are divorced and contesting over the custody of their 3-year-old son. From the record we have

grave doubt that either of them has the requisite maturity to raise a child. She relies entirely on the time-honored rule that all other things being equal the custody of small children belongs to the mother. Cf. Byers v. Byers, Ky., 370 S.W.2d 193, 195 (1963). The chancellor awarded custody to the father.

When the parties separated in November of 1966 the child was left with the father. At the time the evidence was taken Wilma was staying with a cousin in Lexington, and her only means of support was through baby-sitting with the cousin's small child. Donny and the child were living with his parents at their home in Estill County, and he was employed on the night shift at the Westinghouse plant in Richmond. When the chancellor made his findings incident to an interlocutory divorce decree (which was awarded to Donny on the ground of cruel and inhuman treatment) he determined that Donny was entitled to custody of the child subject to reasonable visitation. That was on February 2, 1967. The decree was made final on April 4, 1967.

Pursuant to various motions made in Wilma's behalf the custody question was reopened and a hearing was had on February 2, 1968. Wilma contends that by virtue of a stipulation to the effect that "the chancellor shall consider the entire record" she did not have the onus of proving a change of conditions. We think, however, that the point is immaterial, because she did in fact show a change in circumstances that would have warranted a transfer of custody had the chancellor been so minded. The change of conditions to which we refer is that whereas at the time of the original decision Wilma appeared to be rather precariously situated, she is now regularly employed and living in the home of her mother and father in Estill County. The chancellor did not feel that this difference was enough to alter the opinion he had formed in the first instance, and Wilma's motion for a transfer of custody was overruled.

In a summary of the case delivered from the bench the chancellor observed that since both parties are employed and living with their parents, the child will necessarily spend a good deal of his time in the company of one set of grandparents or the other. Though both sets of grandparents had experienced some marital difficulties of their own, he was of the opinion that they were fit and equally capable of rearing the grandson properly. He said it was a hard choice, but that he had made it and saw no reason to change it.

In his counterclaim Donny alleged that Wilma had been guilty of lewd and lascivious conduct. The divorce was not awarded on that ground, and the chancellor did not specifically find that Wilma was unfit to have custody of the child. There was evidence, however, sufficient to arouse misgivings. For example, Wilma admitted feeling "closer" to another young man—a married man at that—than to her husband. She consulted with and was advised by this friend incident to her decision to leave her husband. Though she insists the relationship was entirely platonic (and it was not proved to be otherwise), it bespeaks an imprudence and lack of good judgment that would justify some doubt as to her fitness to meet the responsibilities of raising a child properly. In that respect at least, all things cannot fairly be called equal between the parties; and as the case stands today, yet another material circumstance has developed in the fact that for two years the child has lived with his father and paternal grandparents and in all probability would suffer some degree of emotional trauma from being uprooted and placed in another home.

While we remain strongly convinced that small children should be left in the custody of the mother, the rule is not inexorable. It is an equally firm principle that as between parents and others (including grandparents) a child should remain with a parent, yet sometimes an exception is made when the child has lived for some time with the non-parent and may be ad-

versely affected by a change in environment. Cf. Lewis v. Lewis, Ky., 343 S.W. 2d 146 (1961); Shaw v. Graham, Ky., 310 S.W.2d 522, 524 (1958); Mosley v. Mosley, Ky., 272 S.W.2d 336, 338 (1954).

A finding of unfitness on the part of the mother is not an indispensable prerequisite of denying her the custody of a child. Cf. Yelton v. Yelton, Ky., 395 S. W.2d 590 (1965). The welfare of the child always takes precedence. McReynolds v. Hughes, Ky., 398 S.W.2d 482 (1966); Whisman v. Whisman, Ky., 401 S.W.2d 583 (1966). "Necessarily, great weight must be given the findings of the chancellor, and his conclusions will not be disturbed except where his discretion is abused." Chastain v. Chastain, Ky., 405 S.W.2d 758, 759 (1966).

We acknowledge this to be a difficult case, but we are unable to say that the chancellor's decision was clearly erroneous.

The judgment is affirmed.

All concur.