Charles A. BORJESSON, Appellant,

v.

Mary F. BORJESSON, Appellee.

Court of Appeals of Kentucky.

Feb. 7, 1969.

William E. Rummage, Bratcher, Rummage, Beard & Flaherty, Owensboro, for appellant.

H. Randolph Kramer, Thacker & Kramer, Owensboro, for appellee.

REED, Judge.

This is an appeal by Charles Borjesson from an order overruling his motion seeking custody of his son, Carl Borjesson, and further directing him to pay arrearages in alimony and child support payments to his former wife, Mary Borjesson, the natural mother of the child whose custody is in controversy.

Mary Borjesson was granted an absolute divorce in an uncontested action from Charles Borjesson in October of 1964. Pursuant to a written agreement between the parties which was confirmed by the trial court and incorporated in the judgment, the custody of their son, Carl Borjesson, who was then eight years old

was vested in the mother. It appears that the parties had another child, a girl named Tamara, who was then fifteen years of age and was either married or about to be married. She was regarded as emancipated and her custody was not dealt with in the judgment.

Mary Borjesson took the child and returned to her former home in East St. Louis, Illinois, and later remarried. She and her present husband now live in St. Louis with Carl, the boy whose custody is in controversy, and another boy, the son of Mary's present husband, who was a widower prior to their marriage. Charles Borjesson, the father of Carl, remained in Owensboro, and he has also remarried. His present wife was formerly married and later divorced. They have three children by her prior marriage living with them.

As all too frequently happens in these cases, Charles and Mary have had continual controversy about his visitation rights and the ill feeling between them has continued without abatement since their divorce.

It appears that Charles went to visit his son in the latter part of 1965 and, according to him, discovered very bad conditions existing in the home in which Carl was then residing with his mother and stepfather. In February of 1966 he brought the child to Owensboro with him and notified the stepfather that he had enrolled Carl in school in Owensboro and did not intend to return him. He also filed a motion for the trial court to modify the prior divorce judgment so as to transfer custody of Carl from Mary to him. Mary waited until that school term was over and then moved the trial court to order the return of the child to her and to adjudge certain back payments in alimony and deficiencies in child support payments provided in the prior divorce judgment. The trial court, after an evidentiary hearing, entered the order from which the father appealed.

In his brief in this court, appellant does not question the order of the trial court so far as it relates to the payments for alimony and child support. Therefore, in this respect the order was proper and to that extent must be affirmed.

The custody question, as usual, presents a much more difficult problem.

It is pointless to extend this opinion by a detailed recitation of the evidence adduced before the trial court. While being probably embarrassing to the innocent child-victim of this dispute in the future, it would at the same time serve no useful purpose to the profession. Suffice it to say that all of the evidence before the trial judge was undisputed that Mary Borjesson has suffered from a chronic recurrent psychoneurotic condition described in the evidence as in the nature of manic-depressive psychosis since 1955. This unfortunate illness has necessitated frequent periods of hospitalization and treatment. At the time Charles took his son to Owensboro in February of 1966, Mary was then engaged in a two and one-half month stay in the hospital under the care of a psychiatrist, and Carl was being cared for by his maternal grandmother in the home of his stepfather.

■ The evidence on behalf of Charles, both medical testimony and lay testimony, was overwhelmingly preponderant that Carl's welfare and best interest required that the father be given custody of this boy. No real attack was made upon the character of Charles' home nor his fitness as a parent, except by the daughter of the parties who at an early age has had a rocky marital career including a divorce where custody of her infant child was for a time placed with its paternal grandparents. The testimony of the daughter, Tamara, also revealed that she had never visited in the present home of her mother and knew nothing of the conditions there.

The psychiatrist presently attending Mary testified that she was much better now, but so far as the question of custody

was concerned it was apparent that he was unfamiliar with the child and was addressing himself solely to what would help the mother in his treatment of her rather than what would be in the best interest of the child. The trial judge in his findings ordering return of the child to the mother justified this action solely upon the testimony of the daughter, Tamara. Without belaboring the matter further, we feel that this finding was against the overwhelming weight of the evidence insofar as it relates to the best interest of the child, Carl, and we reluctantly conclude that this finding must be characterized as clearly erroneous.

We do not retreat in the slightest from our recently expressed view that in custody cases great weight must be given to the finding of the chancellor concerning custody of a child and that his conclusions will not be disturbed except where he has abused his discretion as pointed out in Watson v. Watson, Ky., 434 S.W.2d 33, nor will we substitute our judgment for that of the trial court unless a manifest abuse of discretion has occurred. Smith v. Smith, Ky., 429 S.W.2d 387. Nevertheless, when the evidence is so overwhelmingly preponderant as it is here when read in light of the test which is the welfare of the child, then our duty impels us to characterize that which we are convinced was wrong as clear error.

The case presents another perplexing aspect, however. The record shows that Carl was ordered returned to his mother in July of 1966. He has presumably resided with her and his stepfather since that time. His father, Charles, appealed this order and the matter reached this court in September of 1966. Charles' brief was duly filed. All through 1967, counsel for the respective parties to this appeal filed joint motions for extension of time for Mary to file her brief. Again in the early part of 1968, the same condition prevailed and Mary was given successive extensions through joint motions of counsel for the respective parties through part of 1968. The brief was never filed.

We are unwilling to apply the provisions of RCA 1.260(c) to child custody cases. To do so would be to treat the child as a litigant. The adult parties to this litigation have created a situation by their inaction in this court so as to make it impossible for us to render an intelligent judgment as to the custody of this child based on his present condition and age.

Therefore, we elect to follow the same approach which we adopted in the case of Commonwealth, Department of Child Welfare v. Lorenz, Ky., 407 S.W.2d 699. In the instant case, as there, the child has been with the appellee during the time between the appeal and the present disposition of the case. Changes in conditions and demonstration of fitness by Mary and her present husband might well impel a different finding than we hold should have been made at the time of the entry of the order appealed from.

This sensitive question should be determined in light of the present conditions. Accordingly, we are remanding the matter to the trial court for a new determination based on present conditions.

The order appealed from is affirmed to the extent that it adjudges appellant liable for the arrearages in alimony and child support payments recited therein. It is reversed insofar as it overrules appellant's motion to change the custody of the child from the mother to the father with directions to rehear the matter of Carl's custody in light of present conditions in accordance with what is for the best interest and welfare of the child.

HILL, MILLIKEN, OSBORNE, PALMORE and STEINFELD, JJ., concur.