RENDERED: APRIL 21, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0465-MR

DAVID LEE FARLEY                                     APPELLANT

v.             APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 19-CI-501598

THERESA WILLIS                                      APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE: ACREE, EASTON, AND JONES, JUDGES.

JONES, JUDGE: The appellant, David Farley ("Farley"), appeals from an order of the Jefferson Circuit Court, Family Division, holding him in contempt and ordering several terms to purge his contempt, one term being to re-enroll the parties' child, D.F., into in-person public school. After careful review, we affirm in part, reverse in part, and remand for further proceedings.

# I. BACKGROUND

The parties were divorced on June 29, 2020, by decree of dissolution of the Jefferson Family Court in the underlying civil case. In that decree, the parties were awarded joint custody of their two minor children, A.W. (born 2007) and D.F. (born 2008), with both parties to be involved with all major decisions involving the children, including educational matters. (Record ("R.") at 157-58.)

On September 14, 2021, after a hearing in a separate domestic violence case involving these parties, Case No. 21-D-503030-001, the family court entered a no contact order of domestic violence ("DVO") against Willis in favor of Farley and on behalf of D.F. Additionally, the DVO awarded Farley temporary sole custody of D.F. and was to last for one year. (Supplemental Record ("S.R.") at 3.)

On December 29, 2021, Willis filed a *pro se* motion to hold Farley in contempt of the June 29, 2020, decree in the underlying civil custody case, alleging that Farley was denying her timesharing with A.W. and asking for family therapy between her and A.W. The entirety of affidavit accompanying the form motion for contempt read:

> I request the [c]ourt to hold David Farley in contempt for his/her failure to obey the [c]ourt's [o]rder on 6/29/20, which required that he/she to do the following: Let me get my [d]aughter every other weekend [and] my set schedule for Holidays. The reason I believe David Farley has violated the [o]rder is: I have not seen my

> [d]aughter snice [sic] May 2021 or talked to her.  To fix
> David Farley's failure to obey the [c]ourt's [o]rder, I am
> asking the [c]ourt to:  to do pick up at Home of the
> Innocence and drop off's[.]  CPS would like for me and
> [A.W.] to do family therapy.

(R. at 192.)

On January 10, 2022, the family court set the matter for a thirty-minute hearing to be conducted on February 14, 2022, noting in its contempt hearing order that Willis's motion related to a request "to hold [Farley] in contempt for failure to follow by the [c]ourt [o]rder that was entered by the [c]ourt June 29, 2020, and for family therapy with her children."  (R. at 195.)

Additionally, in the previous domestic violence case, Willis filed a motion to amend the DVO, which was granted on January 11, 2022, to allow her to have supervised and therapeutic visits with D.F.  Reflective of the original DVO, the amended DVO did not modify the award of temporary sole custody to Farley and was to remain in place until September 13, 2022.  (S.R. at 12-13.)

Both parties appeared and represented themselves, *pro se*, at the February 14, 2022, hearing.  The only matter before the family court at that time was Willis's motion for contempt regarding parenting time with A.W. and family therapy.  Early into the hearing, Willis mentioned that Farley had withdrawn D.F. from public school and began homeschooling D.F. sometime after the issuance of the September 14, 2021, DVO.  Farley responded by saying that he removed D.F.

because of concerns with violence and D.F. being bullied. The family court noted concerns with Willis not being able to meaningfully participate in D.F.'s schooling and stated: "I don't think it's a good idea to take the children out of school in a situation like this." (Video Record ("V.R.") – Feb. 14, 2022, Hearing at 9:05:40.) At no other point during the rest of the February 14, 2022, hearing did the family court or either party mention the schooling issue again. During the hearing Farley admitted to having problems with getting A.W. to go to timesharing visits with Willis and that he did not file a motion to modify those visits. (V.R. – Feb. 14, 2022, Hearing at 9:18:20.) He also admitted to never taking A.W. to be assessed for counseling as ordered in the June 29, 2020, decree. (V.R. – Feb. 14, 2022, Hearing at 9:24:08.)

Later the same day, the family court entered an order finding Farley in contempt of the "[c]ourt's orders related to parenting time and medical care for the parties' minor children" and stating how Farley could purge himself of the contempt, with one requirement being to re-enroll D.F. in public school, and the other conditions being for Farley to recommence therapy for both children, to ensure A.W. is available for all therapeutic visits recommended between A.W. and Willis, to immediately resume D.F.'s previous medication treatment, and to ensure D.F. is available for supervised visits between Willis and D.F. (R. at 199-200.)

On February 17, 2022, Farley filed a *pro se* motion requesting the family court to reconsider its February 14, 2022, ruling concerning D.F.'s schooling situation, medication, and therapy along with a letter from one of D.F.'s counselors that addressed some of the concerns about removing D.F. from school. (R. at 202-07.) Counsel for Farley subsequently entered his appearance in the case and requested leave to file an amended motion, which the family court granted. (R. at 212.)

On March 9, 2022, Farley, by counsel, filed a motion requesting a new hearing, or in the alternative, to alter, amend, or vacate the February 14, 2022, order and make additional findings. (R. at 213.) On March 29, 2022, the family court entered an order denying the motion and this appeal followed. On appeal, Farley argues that the family court did not afford him a meaningful opportunity to be heard on the schooling issue and that the family court lacked subject matter jurisdiction to enter an order directing Farley to re-enroll D.F. in public school since sufficient affidavit requirements per KRS[1] 403.350 were not followed.[2] Farley has not raised the issues of D.F.'s medical treatment, visitation, or therapy in this appeal.

---

[1] Kentucky Revised Statutes.

[2] We are not persuaded by Farley's argument concerning the lack of subject matter jurisdiction based on insufficient affidavits accompanying a request for custody modification as it relies on *Petrey v. Cain*, 987 S.W.2d 786, 788 (Ky. 1999), which was overruled by *Masters v. Masters*, 415 S.W.3d 621, 624 (Ky. 2013).

## II. STANDARD OF REVIEW

When examining a family court's decision exercising its contempt powers, the standard we must follow is that of an abuse of discretion: "'[t]he test for abuse of discretion is whether the trial court's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Meyers v. Petrie*, 233 S.W.3d 212, 215 (Ky. App. 2007) (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

Additionally, the standard of review regarding child custody issues is whether a family court's decision made based on the supporting findings of fact is clearly erroneous or constitutes an abuse of discretion. *Eviston v. Eviston*, 507 S.W.2d 153, 153 (Ky. 1974). A factual finding supported by substantial evidence is not clearly erroneous. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Decisions about schooling and medical issues regarding minor children are matters concerning custody. *Warawa v. Warawa*, 587 S.W.3d 631, 636 (Ky. App. 2019) (citing *Keeton v. Keith*, 511 S.W.3d 918, 921 (Ky. App. 2017)).

## III. ANALYSIS

Willis failed to file an appellee's brief herein. Pursuant to Kentucky Rule of Appellate Procedure ("RAP") 31(H)(3), under these circumstances the Court may accept the Appellant's statement of the facts and issues as correct. However, because this case involves custody matters affecting children, we decline

to exercise the permissible sanctions of RAP 31 as to this appeal. *Galloway v. Pruitt*, 469 S.W.2d 556, 557 (Ky. 1971) (citing *Borjesson v. Borjesson*, 437 S.W.2d 191, 193 (Ky. 1969)).

## A. Contempt

One general inherent power of family courts is the power to impose sanctions as the result of a contempt violation. Contempt can be classified as either civil or criminal, the difference being the purpose for which the sanction is prescribed. *Gordon v. Commonwealth*, 141 Ky. 461, 463, 133 S.W. 206, 208 (1911). "The purpose of civil contempt is to coerce rather than to punish – to compel obedience to and respect for an order of the court[,]" while criminal contempt "seeks to punish conduct which has already occurred rather than to compel a course of action." *Commonwealth, ex rel. Bailey v. Bailey*, 970 S.W.2d 818, 820 (Ky. App. 1998); *see also Meyers*, 233 S.W.3d at 215 (citing *Newsome v. Commonwealth*, 35 S.W.3d 836, 839 (Ky. App. 2001)). Specifically, "[c]ivil contempt consists of the failure of one to do something under order of court, generally for the benefit of a party litigant." *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996). In the instant case, the family court found Farley to be in civil contempt as it issued rulings for the purpose of effectuating Farley's compliance with the terms of the June 29, 2020, decree. *See* Feb. 14, 2022, order at p. 3, (R. at 199) (stating that KRS 403.240 "authorizes the court to remedy the

failure to comply" and that Farley "may purge himself of contempt by complying with this [o]rder"). Since the purpose of civil contempt is to compel specific compliance with an order, that order by necessity must be one that is valid and enforceable. With this in mind, we turn to an examination of the June 29, 2020, decree.

There are no specifics on schooling regarding either child in the plain language of the June 29, 2020, decree. The decree simply constructs a timesharing schedule around the times the children may be in school and states that exchanges are to occur at school while it is in session. (R. at 158.) Meanwhile, the provisions of the June 29, 2020, decree are more detailed relating to timesharing and therapy issues involving the children, which happen to be the only two issues mentioned by Willis in her initial motion for contempt and were the primary topics of discussion during the February 14, 2022, hearing.

If the parties had joint custody and equal decision-making authority, an argument remains that Farley's decision to remove D.F. from school constitutes a contemptuous violation of the June 29, 2020, decree; however, we must take into consideration the fact that Farley had temporary sole custody as a result of the DVO. Kentucky courts have long held, in conjunction with the Due Process Clause of the 14th Amendment to the United States Constitution, that the decision-making power regarding a child's upbringing, specifically educational decisions, is

-8-

a fundamental right afforded to that child's parents. "[T]he state is inferior to fit 'parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'" *Hoskins v. Elliott*, 643 S.W.3d 115, 118 (Ky. App. 2022) (quoting *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000)). But that right is one that is not completely unfettered between parents, as a family court from time to time may grant sole custody to one parent, thereby limiting the other parent's right to make decisions for the child. *VanWinkle v. Petry*, 217 S.W.3d 252, 259-60 (Ky. App. 2007).

As was ordered in the September 14, 2021, DVO and again reiterated in the amended DVO from January 11, 2022, Farley was awarded temporary sole custody of D.F. by the family court. An award of temporary sole custody in a domestic violence proceeding is a power afforded to the family court under KRS 403.740(1)(e). As a sole custodian, Farley had the exclusive right to exercise his decision-making authority regarding the child's educational decisions. *See Pennington v. Marcum*, 266 S.W.3d 759, 763 (Ky. 2008). Farley's rights as sole custodian supersede any joint custody rights afforded to Willis under the June 29, 2020, decree. This is a fact that the family court itself appeared to recognize when it specifically stated in the February 14, 2022, order that Farley is in contempt for willfully violating the orders relating to "parenting time and medical care" with no mention of decision-making or education. (R. at 199.) The family court also

stated that the June 29, 2020, decree was superseded by the DVO in its March 29, 2022, order. (R. at 213.) As such, regarding D.F.'s remaining in public school, the June 29, 2020, decree was unenforceable, and the family court abused its discretion when it found Farley in contempt and arbitrarily directed him to re-enroll D.F. in public school.

Additionally, we have recognized that when a party's conduct results in contumacy, the remedy should be reasonably related to the nature and seriousness of the party's behavior. *Meyers*, 233 S.W.3d at 216 (citing *United States v. Conole*, 365 F.2d 306, 308 (3d Cir. 1966)) (holding that the trial court did not abuse its discretion when it ordered a party to attend counseling as a punishment for willfully defying a previous order to attend that counseling). In the instant case, there is no reasonable nexus between the February 14, 2022, order; Willis's requested relief in her motion for contempt (pertaining solely to the timesharing and counseling issues involving A.W.); and the purge condition of re-enrolling D.F. in public school.[3]

---

[3] The provisions requiring Farley to have A.W. assessed for therapeutic services, keeping her in counseling, and ensuring all therapeutic visits between A.W. and Willis occur *are* directly related to his contumacious behavior, *i.e.*, willfully denying the timesharing between A.W. and Willis and not involving A.W. in therapeutic services as ordered. Therefore, these sanctions were properly within the family court's contempt power. On the other hand, as it pertains to D.F., Farley had all custodial decision-making authority by virtue of having sole custody and Willis's motion did not allege any contumacious behavior involving D.F.

## B. Modification of Custody

In addition to its contempt powers, the family court has the power to make determinations and modifications when it comes to matters of child custody. The question we must consider here was whether the family court inappropriately made a modification of custody without a pending motion on that matter before it. Summarily, it did.

In order to challenge a decision made by a custodian, a non-custodial parent effectively must request a modification of custody to either joint or sole in order to have standing to challenge a decision, as any alteration of the custodial parent's decision would inherently alter the nature of the custody. *See, e.g.*, *Pennington*, 266 S.W.3d at 765 (holding that a decision to relocate with a child necessitated a modification of custody); *see also, e.g.*, *Ryan v. Ryan*, No. 2008-CA-000858-MR, 2009 WL 1098330, at *7 (Ky. App. Apr. 24, 2009) (holding that a modification to sole custody was appropriate to allow an educational decision to be made).[4]

In the instant case, no such motion was made by Willis. As discussed above, the only motion before the family court during the February 14, 2022, hearing was Willis's motion to find Farley in contempt of the June 29, 2020, decree. Neither the motion, nor the accompanying affidavit, made any mention of

---

[4] We cite this unpublished opinion for reference as persuasive, nonbinding authority. RAP 41.

D.F. at all. (R. at 191-92). Additionally, during the hearing, Willis herself never made a request to alter custody nor a request to alter Farley's decision to remove D.F. from public school – she merely questioned Farley's decision. The family court subsequently made a *sua sponte* ruling on the schooling issue, despite Farley's objections, despite any witnesses testifying or exhibits being filed, and despite Farley's request for a new hearing or more specific findings.

Generally, courts do not have the power to make rulings *sua sponte*, unless a party or parties to an action raises the issue themselves. "The premise of our adversarial system [of justice] is that . . . courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Delahanty v. Commonwealth*, 558 S.W.3d 489, 503 n.16 (Ky. App. 2018) (citations omitted). Since the promulgation of KRS 403.340, the courts have consistently held that it is improper for a family court to review a modification of a custody decree *sua sponte* within its first two years. *Chandler v. Chandler*, 535 S.W.2d 71, 72 (Ky. 1975). In this case, the original decree awarding joint custody was entered on June 29, 2020, and Willis's motion was filed within two years of that order on December 29, 2021.

Even if we were inclined to consider Willis's motion as a motion to modify custody, the family court failed to make specific findings that supported a modification of custody. When considering a motion to modify custody, a family

court is required to make specific findings which warrant a change in custody; these findings are to be based either on the best interests of the child pursuant to KRS 403.270 or, if made less than two years after the decree, "there is reason to believe that . . . [t]he child's present environment may endanger seriously his physical, mental, moral, or emotional health[.]" KRS 403.340(2)(a). Those findings must be made in a good faith effort of the family court and must be included in a written order. *Murry v. Murry*, 418 S.W.3d 432, 435-36 (Ky. App. 2014) (citing *Anderson v. Johnson*, 350 S.W.3d 453 (Ky. 2011) and *Keifer v. Keifer*, 354 S.W.3d 123, 125-26 (Ky. 2011)).

The only "finding" on the schooling issue relating to the best interests of the child found in the February 14, 2022, order is the absence of a finding, namely: that "[t]here is no evidence that [Farley's wife], can provide the specialized education that [D.F.] requires." (R. at 198.) The family court attempted to rectify this in the March 29, 2022, order, updating its findings to include the declaration that Farley's wife "is not a certified teacher, nor does she have any training in providing education for a child with special needs." (R. at 219.) However, at no point during the February 14, 2022, hearing was testimony or evidence concerning the qualifications of Farley's wife as a school instructor ever introduced. At no point were D.F.'s specific needs discussed or presented to the family court. And again, at no point did Willis even make an oral request to

modify the schooling situation – she merely stated that Farley had removed D.F. from school, while A.W. had remained, and that she personally did not know why that had happened. (V.R. – Feb. 14, 2022, at 8:58:30.) While it is clear that a proper motion for modification of custody or to challenge Farley's decision-making authority was not before the family court, it is equally clear from the record that a meaningful hearing on the subject was not conducted, and the findings of fact that were made are not substantial even if there had been a proper motion.

## IV. CONCLUSION

The family court abused its discretion when it inappropriately required Farley to re-enroll D.F. into public school to purge his contempt of the June 29, 2020, order. Accordingly, the February 14, 2022, order is affirmed in part, namely, that finding that Farley is in contempt of the June 29, 2020, decree regarding the provisions relating to A.W., and reversed in part, namely, the provision that D.F. be re-enrolled in public schools as a purge condition. This matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANT:        NO BRIEF FOR APPELLEE.

Kyle Louis Schickel
Allison White
Louisville, Kentucky